# Third District Court of Appeal

## State of Florida

Opinion filed April 13, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1047
Lower Tribunal No. 08-3100
_____

## Florida Insurance Guaranty Association, Inc.,
Appellant,

vs.

## Erena Mendoza and Pedro Llanes,
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Norma S. Lindsey, Judge.

Restani, Dalmanieras, & Hauser, and Helen Ann Hauser; Cole, Scott & Kissane, and Ivan J. Tarasuk (West Palm Beach), for appellant.

Alvarez, Carbonell, Feltman, & DaSilva, PL, and Paul B. Feltman, for appellees.

Before EMAS, LOGUE and SCALES, JJ.

SCALES, J.

Florida Insurance Guaranty Association, Inc. ("FIGA") appeals a trial court order that substituted FIGA for an insolvent insurer in a first-party lawsuit that was pending at the time the insurer was declared insolvent. We affirm because the trial court's order reflected what had been accomplished statutorily upon FIGA's appointment as the insolvent insurer's guarantor.

**I. Facts**

In 2005, Hurricane Wilma damaged Appellee Erena Mendoza's ("Mendoza")[1] home in Opa Locka. At the time of the loss, Mendoza had a policy of homeowner's insurance with First Home Insurance Company ("First Home").

While not entirely clear from the record, it appears that First Home paid approximately $5,700 to Mendoza based on First Home's evaluation of the loss. Mendoza disputed First Home's evaluation of the loss and, via a June 6, 2006 letter to First Home, sought to invoke the insurance policy's appraisal provision. Allegedly, First Home then failed to participate in the appraisal process, giving rise to Mendoza's first-party breach of contract lawsuit which Mendoza filed against First Home on January 22, 2008.

---

[1] Although the briefs and record are not precise, it appears that at the time of the damage to the home, Mendoza was the insured homeowner. Mendoza filed the complaint in 2008. Later in the proceedings below, co-Appellee Pedro Llanes joined as a party plaintiff. For clarity, throughout this opinion we refer to appellees as "Mendoza."

First Home answered Mendoza's lawsuit by denying the material allegations and asserting that Mendoza had failed to satisfy certain conditions precedent to a proper invocation of the policy's appraisal process.[2]

On September 26, 2011, First Home consented to the appointment of Florida's Department of Financial Services ("DFS") as its receiver for the purposes of attempted rehabilitation. First Home also consented to the entry of a liquidation order if, subsequently, such were determined necessary by DFS.

By virtue of a November 18, 2011 Consent Order, First Home was declared insolvent, and DFS's role as receiver was transformed from rehabilitation facilitator to liquidator. On that date, pursuant to section 631.57 of the Florida Statutes and the Consent Order, FIGA was deemed Mendoza's insurer to the extent that Mendoza's claims against First Home were "covered claims," as that term is defined in section 631.54(3) of the Florida Statutes.

On December 6, 2011, First Home filed a copy of the Consent Order in the instant case, along with a Notice of Mandatory Stay of Proceedings, whereby the trial court and the parties were informed that, pursuant to section 631.041 of the Florida Statutes, all proceedings against First Home were permanently stayed due to the November 18, 2011 Consent Order that declared First Home insolvent.

---

[2] In June of 2011, the trial court denied First Home's summary judgment motion, concluding that material issues of fact remained to be determined regarding the appraisal issue.

3

While FIGA did not file a motion seeking to substitute itself for First Home as the party defendant in Mendoza's lawsuit, FIGA's counsel (the same law firm that had represented First Home in the proceedings) negotiated with Mendoza and made a written settlement offer to Mendoza on August 2, 2013.

For reasons not entirely clear, Mendoza did not accept FIGA's settlement offer until April 29, 2014, when Mendoza sent an e-mail to FIGA's counsel accepting FIGA's August 2013 settlement offer. Also, on April 29, 2014, Mendoza filed a motion to substitute FIGA for the insolvent First Home as the first-party defendant in Mendoza's lawsuit.

Presumably FIGA took the position that Mendoza had not timely accepted FIGA's August 2013 settlement offer, resulting in Mendoza filing a motion in December of 2014, seeking to enforce the "settlement agreement."

In April of 2015, FIGA filed a limited special appearance to contest the trial court's jurisdiction over FIGA and to oppose Mendoza's motions for substitution and to enforce settlement. In its filing, and at the subsequent hearing, FIGA essentially argued that the trial court had no jurisdiction over FIGA because Mendoza's attempt to name FIGA as the defendant in the lawsuit (via Mendoza's April 2014 substitution motion) occurred after the statute of limitations governing claims against FIGA had expired. On April 10, 2015, the trial court conducted a

4

hearing, and thereafter, entered the order on appeal that granted Mendoza's motion to substitute FIGA for First Home.[3]

FIGA has appealed the trial court's non-final order granting the motion for substitution.[4]

**II. Standard of Review**

When the facts are not in dispute and we are faced with a question of law as to personal jurisdiction, as in the instant case, we review the trial court's determination regarding personal jurisdiction on a de novo basis. Navas v. Brand, 130 So. 3d 766, 768 (Fla. 3d DCA 2014).

**III. Analysis**

FIGA argues that, because FIGA was not made a party to Mendoza's lawsuit within the applicable statute of limitations,[5] the trial court erred in entering the substitution order because the trial court lacked personal jurisdiction over FIGA.

---

[3] The trial court requested further briefing from the parties on whether the trial court could enforce the purported settlement agreement.

[4] Under the distinctive facts of this case, we concur with FIGA that the order on appeal determined that the trial court could exercise personal jurisdiction over FIGA. Therefore, the order is appealable as a non-final order pursuant to rule 9.130(a)(3)(C)(i) of the Florida Rules of Appellate Procedure.

[5] FIGA asserts that the applicable statute of limitations is section 631.68, which reads, in its entirety, as follows:

> **Limitation; certain actions.** A covered claim as defined herein with respect to which settlement is not effected and suit is not instituted against the insured of an insolvent insurer or the association within 1

5

We disagree with FIGA, and agree with the trial court's rationale expressed in the transcript from the April 10, 2015 hearing on Mendoza's substitution motion. The trial court correctly concluded that, pursuant to the statutory scheme governing insolvent insurers, and the role of FIGA in that scheme, it was not necessary for Mendoza to obtain separate service of process on FIGA within the limitations period described in section 631.68.

*A. Statutory Process When FIGA is Appointed Guarantor When a Lawsuit is Pending against Insolvent Insurer*

FIGA is a statutorily created non-profit corporation whose purpose is to guarantee "covered claims" of insurers who have been declared insolvent. §§ 631.50-70, Fla. Stat. (2011).

When an insurer is declared insolvent, DFS is appointed the receiver for that insolvent insurer. § 631.051, Fla. Stat. (2011). As part of DFS's receivership, FIGA administers the claim functions and guarantees the "covered claims" of the insolvent insurer. § 631.57, Fla. Stat. (2011). Pursuant to, and subject to the limitations of, section 631.57, FIGA is obligated to pay "covered claims."[6]

---

year after the deadline for filing claims, or any extension thereof, with the receiver of the insolvent insurer shall thenceforth be barred as a claim against the association and the insured.

§ 631.68, Fla. Stat. (2011).

[6] A covered claim means an unpaid claim, including one of unearned premiums, which arises out of, and is within the coverage, and not in

6

Significantly, section 631.57(1)(b) provides, in relevant part, that FIGA "[b]e deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, defenses, and obligations of the insolvent insurer as if the insurer had not become insolvent." § 631.57(1)(b), Fla. Stat. (2011).

When, as here, an insured has filed a first-party lawsuit against the insured's own insurance company prior to the insurer being declared insolvent, upon DFS's filing a delinquency petition against the insurer pursuant to Chapter 631, the lawsuit automatically and permanently is stayed with regard to the insolvent insurer. § 631.041(1), Fla. Stat. (2011).

With regard to FIGA, however, the lawsuit is stayed automatically for a period of six months. § 631.67, Fla. Stat. (2011). The statute plainly and unequivocally sets forth the purpose of the statutory stay as to FIGA: "All proceedings in which the insolvent insurer is a party . . . shall be stayed for 6 months . . . to permit proper defense by the association [FIGA] of all pending causes of action as to any covered claims . . . ." § 631.67, Fla. Stat. (2011).

excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer, if such insurer becomes an insolvent insurer and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state.

§ 631.54(3), Fla. Stat. (2011).

Section 631.67 specifically allows FIGA to request from the trial court that the stay be enlarged, shortened or waived.

### B. Application of Statutory Process to the Instant Case

At the outset, we note that, pursuant to section 631.53, we have an express mandate to construe liberally the statutory scheme governing claims against FIGA so as to promote the purposes articulated in section 631.51. Section 631.51(1) provides: "The purposes . . . are to: . . . [p]rovide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer[.]" § 631.51(1), Fla. Stat. (2011). Yet we need not employ a statutory rule of construction – liberal or strict – in this case because the plain language of the relevant statutory provisions is apparent and requires affirmance.

Upon the declaration of First Home's insolvency, FIGA, by statutory authority, became Mendoza's insurer, having the duty to defend against Mendoza's first-party lawsuit, as if First Home had not become insolvent. § 631.57(1)(b), Fla. Stat. (2011).

Mendoza's pending lawsuit – now against FIGA, the statutorily designated guarantor of First Home – was stayed for six months to allow FIGA sufficient time to prepare a proper defense against the claim. § 631.67, Fla. Stat. (2011). FIGA could seek an enlargement, shortening, or waiver of the 6-month stay.[7]

8

The statutory stay that prohibited proceedings against First Home went into effect when DFS filed its petition against First Home, and that stay is permanent because of the Consent Order requiring the liquidation of First Home. § 631.041(1), Fla. Stat. (2011).

Mendoza's substitution motion merely reflected what had already occurred by operation of section 631.57(1)(b) when First Home was declared insolvent.

*C. FIGA's Suggested Statutory Construction is Inconsistent with Express Statutory Scheme*

FIGA's assertions that Mendoza was required to serve FIGA with separate process and that Mendoza's claim is somehow time-barred by section 631.68 are undermined by the relevant provisions within chapter 631 that expressly govern pending lawsuits against insurers later declared insolvent.

Section 631.68 bars suits that have not yet been filed (in other words, non-pending lawsuits) from being filed more than one year beyond the deadline for filing claims with the receiver for the insolvent insurer. FIGA's interpretation of section 631.68 would impair those specific statutes that address pending cases.

For example, section 631.67 authorizes FIGA to request waiver, enlargement or shortening of the six-month automatic stay; and section 631.67 also

---

[7] Obviously, the purpose of the stay is to allow FIGA to "get up to speed" on the claim, retain existing or new counsel, and determine whether the claim is a covered claim. If FIGA determines the pending claim is not a covered claim, nothing precludes FIGA from amending the pleadings to make such an assertion.

allows FIGA to apply to have vacated any trial court default of an insolvent insurer. If, as FIGA suggests, the trial court did not obtain jurisdiction over FIGA upon the defendant insurer's insolvency, FIGA would lack standing to seek such relief in the trial court. Nothing in section 631.67 conditions FIGA's ability to seek such relief from a trial court upon a plaintiff's either filing a separate suit against FIGA or affirmatively seeking substitution and service of FIGA in a pending lawsuit.

Additionally, if FIGA had to be separately sued and served in pending cases, it is unclear exactly what proceedings would need to be stayed for six months under section 631.67. The plaintiff's action against the insolvent insurer is permanently stayed by virtue of section 631.041(1). Presumably, had the Legislature intended for separate service on FIGA to be effectuated in order for the trial court to gain jurisdiction over FIGA in pending cases, the Legislature would have specified in section 631.67 a stay of "joinder of FIGA" or a stay of "service being obtained on FIGA," in order to further the rationale of the six-month stay.

Section 631.67 is clear on its face: pending lawsuits against insolvent insurers are stayed for six months *to allow FIGA* a considered time period to defend properly against those claims. Nothing in section 631.67 suggests any requirement that FIGA need be separately added and served as a prerequisite to FIGA defending such pending claims.

Also, FIGA's proposed interpretation of section 631.68 would treat first-party claimants fundamentally differently from third-party claimants. As conceded by FIGA at oral argument, a plaintiff with a pending case against an insolvent insurer's insured (i.e., a third-party claimant) need do nothing under chapter 631 in order to ensure that FIGA is obligated to perform its duties with regard to covered claims. FIGA, however, would have a first-party plaintiff with a pending claim against her own insurance company either file a new lawsuit against FIGA or amend and serve FIGA in the plaintiff's existing suit to ensure that FIGA performs its duties with regard to the first-party claimant's covered claims. Nothing in chapter 631 purports to treat first-party claimants with pending claims against their own insolvent insurance company any differently from third-party claimants with pending claims against the insureds of insolvent insurance companies.

Finally, requiring first-party claimants separately to sue or serve FIGA in pending cases against the insolvent insurer is contrary to FIGA's express statutory directive that FIGA "have all duties, defenses and obligations of the insolvent insurer *as if the insurer had not become insolvent*." § 631.57(1)(b), Fla. Stat. (2011) (emphasis added). Mendoza has effected service of process on First Home already; while First Home has answered the lawsuit, conducted discovery and filed a summary judgment motion in the case. FIGA is statutorily required to defend Mendoza's lawsuit *as if First Home had not become insolvent*. FIGA's

11

duties, defenses and obligations relating to Mendoza's lawsuit against First Home cannot be conditioned upon a requirement that Mendoza again effect service of process on the lawsuit's defendant. Nothing in the statutory scheme of chapter 631 requires Mendoza to leap such additional hurdles in order to ensure that FIGA performs its statutorily required duties in this case.

Section 631.68 must be read in harmony with section 631.67, and all other related provisions of chapter 631, in order that the objectives of each of the chapter's provisions not be sacrificed. We must construe related statutes in harmony with each other. Vill. of Doral Place Ass'n v. RU4 Real, Inc., 22 So. 3d 627, 631 (Fla. 3d DCA 2009). Against this backdrop, we conclude that the limitations period in section 631.68 is inapplicable to first-party lawsuits pending against the insurer when the insurer is declared insolvent.

**IV. Conclusion**

Sections 631.57(1)(b) and 631.67 provide the mechanism for what happens when a defendant insurer in a pending first-party lawsuit is declared insolvent. When the insurer becomes insolvent, FIGA assumes the duties, defenses and obligations of the insurer as if no insolvency had occurred. Pending lawsuits against insolvent insurers are stayed for six months from the date of insolvency to allow FIGA to defend covered claims alleged in those pending lawsuits. Nothing in chapter 631 contemplates the necessity for the plaintiff in a

12

pending first-party lawsuit either to bring a new action against FIGA, or separately to serve FIGA in the pending action, in order for the trial court to obtain jurisdiction over FIGA.

Affirmed.